Brown<br>*vs.*<br>Storm.

The declaration contains counts against which there is no objection, which will entitle the plaintiff to a judgement ; but in assessing the damages, none can be assessed on those counts which are founded on the alleged want of title in *Storm*.

The second plea was probably designed to being in question the constitutionality of the betterment act ; but this question was not argued. It is true, all these acts are retrospective ; but I know of no objection against retrospective acts under the constitution of this state, or the United States. The obligation of the contract with *Storm* is not impaired, as the plaintiff can still enforce it against Harvill, if he can give the title which he contracted to give.

The judgement of the court is, that

The plea is insufficient, and that the plaintiff recover his damages.

———◉———

## Artimas B. Larabee *vs.* Daniel Ovit.

Franklin, January, 1832.

L purchased a horse of O, and delivered him a note against a third person in part payment therefor. At the same time it was agreed by the parties, that if L did not within a certain time procure good security for the balance, he was to return the horse, and the note was to become the property of O. L having failed to procure the required security, he returned the horse, and demanded the note, which O declined delivering up at the time, but afterwards told L he might have the note if he, L, would come after it, but said he should sue L for damages. L afterwards again demanded the note, and O refusing to deliver it to him, L brought an action of assumpsit against O to recover the amount of the note; and it was held, that by the contract the note had legally become the property of O, and that the after promise *to re-deliver the note* was made without consideration, and did not amount to a rescinding of the contract.

This was an action of *assumpsit*, and the declaration contained three counts. The first was a special one founded on an alleged

FRANKLIN,
January,
1832.

Larabee
vs.
Ovit.

promise by defendant to deliver to the plaintiff a certain promis-sory note which the defendant had received under the circum-stances hereinafter mentioned. The second count was for mon-ey had and received, and the third for goods, wares and merchan-dise, sold and delivered. The cause had been referred to a re-feree, who afterwards made the following report :

"It appeared in evidence,that in December, 1827, it was agreed betweeu the parties,that the plaintiff should buy of defendant a cer-tain horse at the price of $55, and deliver to him a note against a third person, amounting to about $13, in part payment therefor, and that if plaintiff did not within a certain number of days procure good security for the balance, he was to return the horse to defen-dant, and the note was to be forfeited and become the property of the defendant. In pursuance of this agreement the plaintiff received the horse of defendant, and delivered him the note in question. The plaintiff failed to procure the security required by the contract, and within a few days after the expiration of the time limited by the agreement, he sent back the horse to the defen-dant, and demanded that the note should be redelivered to him. It did not appear that defendant made any objection to receiving back the horse, but told the agent, whom plaintiff had sent with the horse, that he should not give up the note, unless plaintiff would pay him five dollars, which he said was as much as the note was worth. After some altercation between plaintiff's agent and defendant, the defendant told him plaintiff might have the note if he would come after it, but that he should sue him for dam-ages. Defendant received the horse. This took place at some distance from defendant's house, and he said he had not the note with him. On the next day in the forenoon the plaintiff called on the defendant, and demanded said note. The defendant said he had not the note with him, but said if plaintiff would stay till night and would go to his house with him, he would give him the note ; but threatened to sue plaintiff for damages. The defend-ant at the time was at work at some distance from his house. The plaintiff refused to wait and go to defendant's house, but in-sisted on having the note immediately. Several months after-wards, and previous to the commencement of the action, the plain-tiff called at defendant's house, and demanded the note of the de-fendant, who refused to deliver it to him. It appeared that previ-ous to this time the defendant had disposed of the note, and had not gotten it in his possession. The note in question was not ne-gotiable, and was not payable in money.

If the court should be of opinion from the foregoing statement of facts, that the plaintiff ought to recover, then the referee reports, that the plaintiff recover of the defendant the sum of thirteen dol-lars and fifty cents damages and his costs ; and if from the foregoing facts, the court should be of opinion that the plaintiff ought not to recover, then the referee reports that the defendant recover his costs."

FRANKLIN,
*January,*
1832.

Larabee
*vs.*
Ovit.

The county court rendered judgement for the defendant, and the case was reserved for the opinion of this Court.

*Burt and Turner, for the plaintiff,* contended, that there was good consideration for defendant's promise to redeliver the note, and that he was bound to perform it—That if the defendant withhold the note, he does it without any consideration. He has not sustained any injury in consequence of the plaintiff's keeping the horse a few days : the horse was not injured—That the agreement, that the note should be forfeited and become the property of the defendant, on failure of the plaintiff to procure the security for the balance of the value of the horse, was unreasonable, unconcionable, and a gambling transaction.

*Sheldon, for the defendant,* contended, that the facts contained in the report made a contract essentially different from the one set forth in the declaration, and did not at all support the declaration—That the general count for money had and received was not supported by the report, because the note sued for was not payable in *money* ; nor did it appear from the report the money had at any time been paid upon it—That the count for goods wares and merchandise was not supported, because promissory notes were not considered as goods, wares and merchandise, and did not come within the legitimate technical meaning of those *terms*—That by the terms of the contract, as found by the referee the note was forfeited, and had become the property of the defendant; and it did not appear from the report that the promise made by the defendant to the plaintiff's agent, *to redeliver the note in question,* was founded upon any sufficient consideration.

HUTCHINSON J., *delivered the opinion of the Court.*—This is an action of *assumpsit* in three counts. The first alleges a special promise about a note, which clearly is not proved by the facts found and reported by the referee. The second count is general *indebitatus assumpsit* for money had and received ; and the third is a general count for goods sold and delivered. The referee reports the fact, that the defendant had sold the note in question, before the same was demanded by the plaintiff at the last call before the commencement of the action. This fact renders the defendant liable to the plaintiff on these general counts, provided the note was the property of the plaintiff. This overrules one of the objections made to the plaintiff's recovering, and brings us the principal question litigated ; that is, whether the

FRANKLIN,
January,
1832.

Larabee
vs.
Ovit.

note in question was the property of the plaintiff, and ought to have been delivered up to him.

It seems, by the report of the referee, that this note, of about thirrteen dollars, was delivered by the plaintiff to the defendant in part payment for a horse, purchased by the plaintiff from the defendant, at the price of fifty-five dollars ; and this under a further agreement, that, if the plaintiff should not, by a certain time agreed upon, furnish good security for the remaining value of the horse, he should deliver him back to the defendant, and the note should remain the property of the defendant. The security was not procured by the time agreed upon, and, soon afterwards, the plaintiff sent back the horse and demanded the note. The defendant made no objections to receiving the horse, but refused to give up the note. Now, it is contended by the plaintiff, that this sale of the note by the plaintiff to the defendant was void, being in the nature of a gambling contract. We have found no difficulty in deciding this point for the defendant. We discover nothing like a deposit of this note subject to a future casualty, or event, in a way which characterizes gambling contracts. The defendant's horse went into the possession of the plaintiff as the property of the plaintiff. He had a right to use him as his own. He had a right to sell him. If he had sold him for twenty or thirty dollars more than he gave for him, the gain would have been his. On the other hand, the defendant, while the horse was gone from him, not only lost the use of him, but was deprived of all power to make a sale, if any opportunity occurred. This may therefore be considered a fair contract, which the parties had an undoubted right to make, and in making which each could make his own calculations about the benefit of the contract to him, as well as he could as to what would prove to be the fair value of the horse.

We have had more difficulty about another point, suggested by the plaintiff's counsel : that is, whether the recital in the report of the after conversations of the defendant with the agent, who took back the horse, and with the plaintiff himself, did not amount to a rescinding or abandonment of the contract. We think, upon the whole, that the most that can be made of this is, that it is evidence tending to prove such rescinding or abandonment. And we must treat this report like a special verdict. We can infer no facts from evidence : we can only say what the law is upon the facts found. If the referee had, instead of detailing the evidence, reported such a rescinding or abandonment, we should have decid-

ed the contract at an end, and the defendant liable to the plaintiff for the amount of the note he received under the contract before it was rescinded. Perhaps the referee would have been warranted in drawing the inference of a rescinding of this contract; though I confess I see some difficulty in it. The defendant's strongest expressions, that he would give up the note, were accompanied with threatenings to sue for damages, when he said he would give up the note. If we would view it as a promise, we find no consideration for the promise. And no circumstance is reported, and no conversation detailed, but what would leave it probable, that the defendant was equitably entitled to something from the plaintiff, on a settlement of the whole concern, if he gave up the note. Similar conversations while the plaintiff had the horse, and which might have induced him to return him to the defendant, would have had a stronger tendency to prove a rescinding or abandonment of the contract. But what is now said about the weight of the evidence detailed, I say for myself only. We are deciding the cause as upon a writ of error, and must decide upon the facts found. And, as the county court decided for the defendant upon these facts, their

Judgement must be affirmed.